IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE |
| ROBERTO ROJAS DUQUE, | NO. 1:20-CR-203-MHC-JKL |
| Defendant. | |

## ORDER

### I. BACKGROUND

Defendant Roberto Rojas Duque ("Rojas Duque") has been charged in a two-count indictment with intentionally possessing with the intent to distribute at least at least one kilogram of heroin and at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Criminal Indictment [Doc. 1]. On June 3, 2022, United States Magistrate Judge John K. Larkins III issued a Final Report and Recommendation ("R&R") [Doc. 67] recommending the denial of Rojas Duque's Motion to Suppress Warrantless Traffic Stop [Doc. 50].

The Order for Service of the R&R [Doc. 68] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections

within fourteen (14) days of the receipt of that Order. See also FED. R. CRIM. P. 59(a). Rojas Duque timely filed objections ("Def.'s Objs.") [Doc. 69].

## II.   STANDARD OF REVIEW

In reviewing a magistrate judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2012). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). If there are no specific objections to factual findings made by the magistrate judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59. Further, "the district court has broad discretion in reviewing a magistrate judge's report and recommendation"—it "does not abuse its discretion by considering an argument

that was not presented to the magistrate judge" and "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." Williams v. McNeil, 557 F.3d 1287, 1290-92 (11th Cir. 2009). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## III.   DISCUSSION

The two objections raised by Rojas Duque are to the Magistrate Judge's findings that there was probable cause to stop the 2009 Nissan Murano that was driven by him on January 13, 2020, and that the vehicle was abandoned by Rojas Duque when he fled the scene following the stop of the vehicle by state troopers. See generally, Def.'s Objs. The facts as established at the evidentiary hearing show as follows:

- The Drug Enforcement Administration ("DEA") began an investigation of Rojas Duque in November of 2019 after a confidential source ("CS") identified Rojas Duque as a supplier of heroin. Mar. 10, 2022, Tr. of Evidentiary Hr'g at 6.

- Controlled purchases of heroin were made by the DEA from Rojas Duque using the CS with Rojas Duque driving a 2009 Nissan Murano (the "Murano"). Id. at 6-7.

3

- After identifying the Murano as the vehicle used by Rojas Duque during the controlled transactions, DEA applied for and obtained a warrant for an electronic tracking device to affix to the Murano to monitor its movements. Id. at 7-8.

- On January 13, 2020, DEA agents set up another controlled purchase of methamphetamine and heroin from Rojas Duque using the CS, with Rojas Duque saying that he had "1000 pills and 3 kilos" and instructing the CS to meet him at an apartment complex. Id. at 8-12. Based on the tracking device and an eyewitness, Rojas Duque was observed getting into the Murano where the agents expected the drugs that were to be delivered to the CS to be present. Id. at 11-12. This surveillance information was relayed to other law enforcement officers, including Georgia State Patrol ("GSP") Corporal Jordan Ellis ("Ellis"), to assist in making a traffic stop of Rojas Duque prior to the completion of the drug transaction. Id. at 12-13.

- At the time of the traffic stop, Ellis was part of the group of law enforcement officers that had received information about the planned meeting between Rojas Duque and the CS for the illegal drug purchase, that Rojas Duque had entered the Murano to drive to the meeting, and that there were narcotics in the Murano. Id. at 11-13, 28-29.

- Once Ellis located the Murano traveling westbound on Interstate 285, he testified that he observed Rojas Duque failing to maintain his lane, although he had no "direct recollection" of the traffic violation. Id. at 29-30. Because there was not enough highway area to safely conduct the traffic stop, Ennis waited to initiate the stop and activate his cruiser lights, which delayed the activation of his dash camera, so the purported traffic violation was not apparent on the dash cam video. Id. at 30-33.

- Once Rojas Duque stopped the Murano on the shoulder of the road, he exited the car and took off running up the hill on the side of the interstate and started throwing bags of drugs out of his pockets. Id. at 33-34. Rojas Duque was then apprehended and taken into custody and "several kilos" of methamphetamine was recovered from the Murano. Id. at 34-38.

4

In his motion to suppress before Judge Larkins, Rojas Duque argued that there was no legitimate basis for Ennis's traffic stop and Rojas Duque's flight after the stop did not constitute abandonment of the vehicle [Docs. 63, 66]. Judge Larkins expressed skepticism that the Government met its burden to show that there was probable cause to believe that Rojas Duque failed to maintain his lane to support a traffic stop. R&R at 8-9. However, Judge Larkins found that Ellis had probable cause to believe that "Rojas Duque was transporting significant amounts of illegal drugs" based on the collective knowledge of the law enforcement officers. Id. at 10-11. In addition, Judge Larkins found that when Rojas Duque fled the Murano after the stop and threw bags containing drugs from his pockets, he abandoned any expectation of privacy in the Murano but that, even if there was no such abandonment, the search of the Murano was valid under the automobile exception to the search warrant requirement. Id. at 12-14.

Rojas Duque's objections are minimal. He "objects to the Magistrate [Judge]'s finding [that] there were other bases of probable cause to stop [the] vehicle" and that "he lacked standing to challenge the search of his vehicle" because of any abandonment. Def.'s Objs. at 1-2. Rojas Duque cites no case law and makes no additional argument as to why Judge Larkins' findings or conclusions are erroneous.

A warrantless search of an automobile is constitutional if (1) the automobile is readily mobile and (2) there is probable cause to believe that it contains contraband or evidence of a crime. United States v. Lanzon, 639 F.3d 1293, 1299-1300 (11th Cir. 2011) (citing United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003)). The first prong is satisfied if the car is operational, which is not contested here. Watts, 329 F.3d at 1286 (citation omitted). Regarding the second prong, "[p]robable cause exists when there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances." Lanzon, 639 F.3d at 1300. "In deciding whether a search or seizure was justified, this Court may look to the collective knowledge of the law enforcement officials involved in an investigation 'if they maintained at least a minimal level of communication during their investigation.'" United States v. Andres, 960 F.3d 1310, 1317 (11th Cir. 2020) (quoting United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985)). See also Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018) (citation and quotation omitted) ("Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed.").

6

This Court agrees with Judge Larkins that the collective knowledge of the agents involved in the DEA investigation, combined with the level of communication between Ennis and the DEA agents on the day of the search of the Murano, resulted in the existence of probable cause to believe the Murano's vehicle contained contraband.

> Here, Cpl. Ennis was included in the group text exchange with other members of law enforcement on the morning of January 13, and prior to initiating the traffic stop, Cpl. Ennis knew of the agents' surveillance of Mr. Rojas Duque, Mr. Rojas Duque's phone calls with the CS, and Mr. Rojas Duque's statement that he possessed three kilograms of methamphetamine and 1000 pills. In addition, during this entire period, the DEA was monitoring the movements of the Murano based on the tracker warrant. In these circumstances, the Court readily concludes that the law enforcement officers with the DEA and GSP were in sufficient communication to allow their collective knowledge to serve to establish probable cause.

R&R at 10-11.

Moreover, a defendant who flees his automobile to evade the police abandons the vehicle and relinquishes his Fourth Amendment rights to challenge any search of the vehicle because is purpose in doing so was to "disassociate himself from the vehicle and the narcotics that were in it." United States v. Falsey, 566 F. App'x 864, 867 (11th Cir. 2014). Judge Larkins's finding that Rojas Duque abandoned the Murano was supported by law; however, it is important to note that Judge Larkins made the alternative finding that, even if Rojas Duque did not

7

abandon his reasonable expectation of privacy in the vehicle, the subsequent warrantless search of the vehicle was authorized by the automobile exception. R&R at 13-14. Rojas Duque does not challenge that alternative finding.

Consequently, Rojas Duque's objections to the R&R's findings concerning the search of his vehicle are **OVERRULED**.

## IV.  CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant object, the Court **OVERRULES** those objections [Doc. 69]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the Final Report and Recommendation [Doc. 67] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Defendant Rojas Duque's Motion to Suppress Warrantless Traffic Stop [Doc. 50] is **DENIED**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant as ready for trial on June 3, 2022, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendants' objections to the

Report and Recommendation outweigh the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161 et seq.

**IT IS SO ORDERED** this 11th day of July, 2022.

_____
MARK H. COHEN
United States District Judge